## In The United States District Court

## For The Middle District Of Louisiana

| | | |
|---|---|---|
| **Joerica Brown** | ) | |
| | ) | |
| Plaintiff | ) | Civil Action No. 22-675-BAJ-EWD |
| | ) | |
| v. | ) | |
| | ) | |
| **Amesbury Management LLC** | ) | |
| | ) | |
| Defendant | ) | |

___

### Amended Complaint

Plaintiff Joerica Brown, through undersigned counsel, hereby files this Amended Complaint.

1. Joerica Brown is an individual of the full age of majority and a resident of Ascension Parish, Louisiana.

2. Amesbury Management LLC ("Amesbury"), is a Louisiana limited liability company corporation with its principal place of business located in Baton Rouge.

3. Amesbury employed more than fifteen individuals within this state at all relevant times to this Amended Complaint.

### Jurisdiction and Venue

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

5. A substantial part of the events or omissions giving rise to this claim occurred within this District, and Defendant maintains its principal place of business within this District. Venue is therefore proper in this Court.

6. Plaintiff filed a Charge with the Equal Employment Opportunity Commission ("EEOC"), within 300 days of the termination of her employment.

7. On August 23, 2022, the EEOC issued a right to sue letter to Plaintiff. Plaintiff timely filed her initial Complaint within 90 days of receiving the right to sue letter.

8. Plaintiff has therefore satisfied all administrative prerequisites for filing this suit.

9. Plaintiff hereby requests a trial by jury on all claims so triable.

## FACTUAL ALLEGATIONS

10. In 2017, Plaintiff began working as the Site Manager for the Hidden Oaks Apartments Complex in Baton Rouge, Louisiana.

11. Prior to June 2019, Plaintiff was employed by Sunridge Management Group, Inc., ("Sunridge") a third party management company which managed the Hidden Oaks Apartments on behalf of the owner.

12. On or about June 14, 2019, Amesbury replaced Sunridge as the management company at Hidden Oaks.

13. Plaintiff, along with all other employees at Hidden Oaks, continued working for Amesbury after the transfer.

14. Amesbury relied heavily on Plaintiff, as a tenured employee, in managing this transfer and the continuing operations at Hidden Oaks.

15. Plaintiff was the only certified Tax Credit Specialist at Hidden Oaks, and was therefore the only Amesbury employee capable of handling critical issues related to the Hidden Oaks facility's tax status.

16. Plaintiff was also instrumental in confirming Amesbury's relationship with the local East Baton Rouge housing authority, and setting up new accounts there, as she was the

only Amesbury employee with a relationship with the individuals at the housing authority.

17. During her time with Amesbury, Plaintiff continued working at Hidden Oaks, performing the same tasks as Site Manager, and providing essentially the same services, as she did with Sunridge.

18. Amesbury and Sunridge provide fundamentally similar services; that is, third-party management services of apartment complexes.

19. In July 2019, Amesbury was aware that Plaintiff was pregnant and would likely intend to take childbirth leave in the near future.

20. Plaintiff intended to work until the baby's due date. During her previous pregnancies, Plaintiff had continued working up until the day of delivery.

21. At no point did Plaintiff suggest to Amesbury that she intended _not_ to return to work after her maternity leave. Indeed, on July 23, 2019, Plaintiff emailed Amesbury's COO, Denise Scelfo, stating that during her pending leave "I will still be available to help in anyway that I can until my return."

22. On July 24, 2019, Plaintiff emailed Scelfo regarding an upcoming doctor's appointment. Scelfo responded that "we think that its' best if you start your leave today. You are just too close. We will be on standby for when you have that precious baby so please keep us posted."

23. Plaintiff responded "Yes ma'am. Thank you so much. I will definitely keep you updated." Later that same day, Scelfo emailed Plaintiff and stated that "We will take good care of the properties while you are out."

24. Amesbury did not provide Plaintiff with any documentation regarding her maternity leave; nor did it request any documentation from Plaintiff.

25. Amesbury did not provide Plaintiff with a specific return date from her leave;

nor did it ask her to provide her own estimated return date.

26. During her maternity leave, Plaintiff remained ready to assist on an as-needed basis. On at least two occasions during her leave, the Hidden Oaks assistant manager called her with questions, and Plaintiff provided guidance and advice.

27. In response to one of these calls, Plaintiff attempted to log in to her Amesbury email account. She was not able to do so.

28. On or about August 14, 2019, Plaintiff heard a rumor that Amesbury had hired a new Site Manager at the Hidden Oaks location.

29. On August 14, 2019, Plaintiff texted Scelfo: "Good afternoon. When you can talk can you call me. I am in need of some information. Thank you." Scelfo did not respond to this text message.

30. At some point during August 2019, Scelfo called Plaintiff and told her that Amesbury had hired a new manager at Hidden Oaks to work in Plaintiff's absence. Scelfo also told Plaintiff "don't worry" and "we'll see you when you return." Based on these statements, Plaintiff had no reason to believe her job was in jeopardy.

31. On September 9, 2019, Plaintiff texted Scelfo: "Good morning, I hope all is well!! Is it possible for us to have a meeting before I come back or on my day of returning? I will be ready to return to work on the 16th. ☺"

32. Scelfo did not respond until September 14th, and said she would call Plaintiff "on Monday [i.e., September 16th] to set up a meeting."

33. Scelfo did not call or otherwise contact Plaintiff on Monday, September 16th. Nor did she respond when Plaintiff texted her on that date.

34. On at least 4 occasions, Plaintiff tried to call Scelfo either at the Amesbury head office or on her cell phone. Plaintiff either did not receive an answer, or spoke to the secretary

and was told that her message would be passed on.  She never received a call back.

35. On September 30, 2019, after hearing nothing from Scelfo or anyone else at Amesbury, Plaintiff went downtown to the Amesbury head office.

36. Scelfo finally agreed to speak with Plaintiff in person, and told her that Amesbury had no job position for her.

37. At no point during her maternity leave did Defendant, or any employee of Defendant, contact Ms. Brown to ask whether she intended to return to work, or what her expected date of return was.

38. At no point during her maternity leave did Defendant, or any employee of Defendant, contact Ms. Brown to inform her of her status with the company.  To the contrary, Defendant led Plaintiff to believe that she had nothing to worry about with respect to her job.

39. On information and belief, Plaintiff was replaced and effectively terminated on or about August 14, 2019.  (Albeit Defendant did not inform her of this fact, and attempted to *hide* this fact from her, for several weeks).

40. The manager who replaced Plaintiff was not pregnant.

## FIRST CAUSE OF ACTION

## TITLE VII/PREGNANCY DISCRIMINATION ACT

41. Plaintiff hereby realleges and reincorporates all paragraphs set forth above.

42. The Pregnancy Discrimination Act forbids discrimination against any employee based on pregnancy, childbirth, or related medical conditions.

43. Defendant discriminated against Plaintiff in violation of Title VII and the Pregnancy Discrimination Act by terminating Plaintiff's employment because of her pregnancy, childbirth, or related medical conditions.

44. As a direct and proximate result of this unlawful conduct, Plaintiff has suffered

from damages including lost wages and benefits, stress and anxiety, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

45. Defendant's unlawful and retaliatory conduct was outrageous and malicious, intended to injure the Plaintiff and done in conscious disregard of her civil rights, entitling Plaintiff to an award of punitive damages.

## SECOND CAUSE OF ACTION

## FAMILY AND MEDICAL LEAVE ACT

46. Plaintiff hereby realleges and reincorporates all paragraphs set forth above.

47. At all relevant times, Plaintiff was an eligible employee and Defendant was a covered employer, as defined by the FMLA and its accompanying regulations.

48. In the 12 months preceding August 14, 2019, Plaintiff had performed at least 1,250 hours of service for Defendant and/or Sunridge.

49. Amesbury is the successor in interest to Sunridge for purposes of determining the 12-month and 1,250 hour requirements of the FMLA.

50. Defendant, alone or in tandem with the additional Amesbury companies, employed or jointly employed 50 or more employees within a 75 mile radius of its headquarters.

51. The additional Amesbury companies include, but are not necessarily limited to, Amesbury Living LLC and Amesbury Construction Services LLC. These companies share common management, common ownership, operate from the same office, and their labor relations are controlled by the same individuals including Denise Scelfo and Robert Peek.

52. Defendant and the other Amesbury companies qualify as an integrated enterprise under the FMLA for purposes of the 50 employee requirement.

53. The FMLA provides a right to leave for, *inter alia*, the birth of a child. 29 U.S.C.

§ 2601(b)(2); 29 U.S.C. § 2612(a)(1)(A).

54. Defendant engaged in prohibited conduct under the FMLA by interfering with, restraining, or denying Plaintiff's rights provided under the Act.

55. Defendant never provided Plaintiff with notice of rights under the FMLA, or notification of whether any portion of leave was being designated as FMLA leave.

56. Defendant terminated (or constructively terminated) Plaintiff prior to her return from leave.

57. Defendants' actions were intentional or performed in reckless disregard of Plaintiff's rights under the FMLA, and performed without reasonable ground for believing these actions were lawful.

58. Defendants' unlawful actions have caused damages to Plaintiff in an amount to be proven at trial.

**WHEREFORE**, Plaintiff respectfully prays for judgment as follows:

   a. For a declaratory judgment stating that Defendant's practices and actions alleged herein violate federal law;

   b. For an award of all lost wages, including benefits;

   c. For other general and special damages according to proof;

   d. For an award of reasonable attorney's fees;

   e. For costs of suit;

   f. For injunctive or equitable relief as provided by law;

   g. For an award of compensatory and punitive damages to be proven at trial;

   h. For pre and post-judgment interest;

   i. For an award of liquidated damages; and

   j. For such other and further relief as may be just and proper.

Respectfully Submitted,

*/s/ Charles J. Stiegler*
Charles J. Stiegler, #33456
STIEGLER LAW FIRM LLC
318 Harrison Ave., Suite #104
New Orleans, La. 70124
(504) 267-0777 (telephone)
(504) 513-3084 (fax)
Charles@StieglerLawFirm.com