# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JOERICA BROWN**

**VERSUS**                                           **CIVIL ACTION**
                                                     **NO. 22-675-JWD-EWD**

**AMESBURY MANAGEMENT, LLC**

## RULING AND ORDER

This matter comes before the Court on the *Motion for Summary Judgment* (Doc. 43) filed by defendant Amesbury Management LLC ("Amesbury" or "Defendant"). Plaintiff Joerica Brown ("Brown" or "Plaintiff") opposes the motion. (Doc. 49.) Defendant has filed a reply. (Doc. 52.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the *Motion for Summary Judgment* is granted in part and denied in part.

## I.    RELEVANT FACTUAL BACKGROUND[1]

Defendant "is a property management company, which oversees rental properties in Louisiana and Texas on behalf of the properties' owners[,]" dealing with the properties' upkeep and leasing. (*SUMF*, Doc. 43-2 at 1, ¶¶ 1–2.) The Chief Executive Officer ("CEO") of Defendant is Robert Peek ("Peek"), and the Chief Operating Officer ("COO") is Denise Scelfo ("Scelfo"). (*Id.* at ¶ 3.) Defendant's properties each have a Site Manager, also known as a Community Director, who oversees the property's operations. (*Id.* at ¶ 4.)

> The Site Manager is responsible for performing a wide variety of tasks in connection with the particular property or properties, including determining a rental rate, marketing the property, screening tenants, preparing for tenant move ins and move outs, collecting rent, evicting tenants, managing finances, maintaining the

---

[1] Unless otherwise indicated, when the Court cites to the *Statement of Undisputed Material Facts* ("*SUMF*") in support of a fact, that fact has been admitted by the opposing party. *See* M.D. La. Civ. R. 56(f)

property, managing tenant complaints, supervising employees and vendors, and maintaining tenant ledgers and files.

(*Id.* at ¶ 5.)

In 2019, the owner of two properties in Baton Rouge, Louisiana, Hidden Oaks at Siegen Apartments ("Hidden Oaks") and Bluebonnet Ridge Apartments ("Bluebonnet Ridge") (collectively, the "Properties"), approached Peek about buying the Properties. (*Id.* at 2, ¶ 7.) Peek, along with other Amesbury employees, inspected the Properties, but Peek decided to only manage, not purchase them. (*Id.* at ¶¶ 8–9.) SunRidge Fee Management Group ("SunRidge") was the previous management company. (*Id.* at ¶ 10.)

Because Defendant lacked experience with the Properties, it wished to employ some individuals who had worked for SunRidge. (*Id.* at 3, ¶ 13.) "Scelfo and Kristin Miesch [("Miesch")], the Regional Property Director for Amesbury, met with the SunRidge employees to determine if they wanted to hire any of those employees to work for Amesbury." (*Id.* at ¶ 14.) Plaintiff was Site Manager at Bluebonnet Ridge and was one of the employees Scelfo and Miesch met. (*Id.* at ¶ 15.) Defendant hired five employees from SunRidge, including Plaintiff. (*Id.* at ¶ 17.) Defendant also hired Bobby Wilson ("Wilson"), a maintenance worker that worked for SunRidge as an independent contractor. (*Id.* at ¶ 18.) All employees were required "to submit employment applications, take drug tests and undergo background checks, and all employees received new hire dates." (*Id.* at ¶ 20.)

The Properties were tax credit properties, which "provide affordable housing to low-income families and individuals in exchange for which the property owner can claim federal tax credits." (*Id.* at 4, ¶ 24–25.) Plaintiff had knowledge of this type of property, including the extra documentation required to receive tax credits. (*Id.* at ¶¶ 24–26.) "Scelfo made the decision to hire plaintiff, a decision Miesch and Peek agreed with." (*Id.* at 5, ¶ 27.)

2

Scelfo, Miesch, and Peek were aware that Plaintiff was visibly pregnant when she was hired. (*Id.* at ¶ 28.) Plaintiff began working for Defendant on June 14, 2019, with a salary of $48,000, about $10,000 more than she was paid by SunRidge. (*Id.* at ¶¶ 31–32.) Although Plaintiff was Site Manager for Bluebonnet Ridge, she told Scelfo "she wanted to be the Site Manager at Hidden Oaks . . . and Scelfo approved plaintiff's request in this regard." (*Id.* at ¶ 34.) "Yolanda Givens [("Givens")] became the Site Manager at Bluebonnet Ridge and plaintiff helped out as needed." (*Id.* at 6, ¶ 36.)

Approximately a month later, on July 24, 2019, Scelfo suggested that Plaintiff begin her maternity leave because she was due to give birth within the next week, and Plaintiff began her leave. (*Id.* at ¶¶ 37–38.) "Plaintiff did not disagree with starting her leave on July 24 . . . ." (*Id.* at ¶ 40.) Plaintiff gave birth on July 30, 2019. (*Id.* at ¶ 39.) Plaintiff and Scelfo did not discuss how long Plaintiff's leave would last. (*Id.* at ¶ 42.)

On August 12, 2019, while Plaintiff was on maternity leave, Defendant hired Tamara Lewis ("Lewis") as the Hidden Oaks Site Manager. (*Id.* at 8, ¶ 56.) "Scelfo wanted to help plaintiff and was trying to find a different position for plaintiff with Amesbury if plaintiff wanted to return to work." (*Id.* at ¶ 57.) In September 2019, Plaintiff reached out to Scelfo about returning to work, but Scelfo informed Plaintiff that another Site Manager had been permanently hired. (*Id.* at ¶ 59.) "Scelfo informed plaintiff that she would contact plaintiff once staffing was figured out." (*Id.* at ¶ 60.) However, there were no alternative positions, and Scelfo informed Plaintiff on September 30, 2019, that her employment would be terminated. (*Id.* at 9, ¶¶ 61–62.) Plaintiff and Scelfo did not discuss the reasons for keeping Lewis as the permanent Site Manager. (*Id.* ¶ 63–65.)

"On approximately January 6, 2022, plaintiff filed a charge with the Equal Employment Opportunity Commission ('EEOC')." (*Id.* at ¶ 69.) This filing "was the first time Amesbury was

aware that plaintiff was alleging she was discriminated against because of her pregnancy." (*Id.* ¶ 70.) Until Plaintiff was fired while on maternity leave, her relationship with Defendant and its management was good. (*Id.* at 10, ¶¶ 72–76.)

There are two other companies associated with Defendant, Amesbury Construction Services, LLC ("Construction") and Amesbury Living, LLC ("Living"). (*Id.* at ¶ 78.) "Construction is a small construction company that provides interior painting and other smaller-scale construction services for multi-family and commercial real estate in Louisiana and Texas." (*Id.* at 11, ¶ 79.) "Living is in the corporate housing business and leases apartments on a short-term basis for clients." (*Id.* at ¶ 80.) Living does not have, and has never had, employees. (*Id.* at ¶ 81.) Plaintiff only worked for Defendant, and did not do any work for Construction. (*Id.* at ¶¶ 82–88.) Miesch and Scelfo, Plaintiff's supervisors, were solely employed by Defendant and did not perform any work for Construction. (*Id.* at 12, ¶¶ 89–91.)

Peek is the only common manager between Defendant and Construction. (*Id.* at ¶ 92.) Defendant and Construction operate separately, and their files, financial records, books, taxes, bank accounts, and equipment are separate. (*Id.* at ¶¶ 95–96.) Defendant and Construction use the same vendor for payroll and human services, they have separate agreements with the vendor and each one pays for those services separately. (*Id.* at 13, ¶ 100.)

Plaintiff had not been employed by Defendant for twelve months prior to beginning her maternity leave and had not worked at least 1,250 hours for Defendant. (*Id.* at ¶¶ 106–107.) Before Defendant took over management of the Properties, Plaintiff "put in her notice to quit her job at SunRidge . . . [,]" but withdrew the notice when Defendant took over. (*Id.* at 14, ¶ 116.)

## II.     SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden and must identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)).

However, "the movant 'need not *negate* the elements of the nonmovant's case.' " *Id.* (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc))). That is, "[a] movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (citing *Celotex*, 477 U.S. at 323 ("we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.") (emphasis in original)). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Id.* (citing *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)).

If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue* for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations,

by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted).

Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (cleaned up). Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (citations omitted).

### III.  DISCUSSION

#### A.  Parties Arguments

##### i.  *Motion for Summary Judgment* (Doc. 43)

###### 1.  FMLA

####### a.  Employer

Defendant first argues that it is not considered an employer under the Family Medical Leave Act ("FMLA"). (Doc. 43-1 at 8.) In order to be such, it must employ "50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year . . . ." (*Id.* (quoting 29 U.S.C. § 2611(4)).) Defendant contends that "[i]t is undisputed that" it did not employ more than 50 employees in 2018 and 2019. (*Id.*) It anticipates that Plaintiff will attempt to argue that Defendant and Construction are joint or integrated employers, which would cause Defendant to meet the 50-employee threshold. (*Id.* at 9 (citing 29 C.F.R. §§ 825.106; 825.104(c)).)

Defendant first argues that it and Construction are not joint employers.[2] (*Id.* at 9–11.) Defendant then argues that it and Construction are not an integrated employer. (*Id.* at 11.) Two separate entities may be considered an integrated employer, depending on the factors set forth in 29 C.F.R. § 825.104(c)(2): "(1) common management, (2) interrelation between operations, (3) centralized control of labor relations, and (4) degree of common ownership/financial control." (*Id.* (cleaned up).)

Discussing the first factor, common management, Defendant argues that there is only one common manager between it and Construction: Peek. (*Id.*) Defendant has officers other than Peek who are not involved with Construction, and Construction likewise has other officers who are not involved with Defendant. (*Id.*) Thus, Defendant argues, this factor weighs against finding an integrated employer. (*Id.*)

As to the second factor, interrelation between operations, Defendant contends that the evidence in the record indicates that it operates separately from Construction. (*Id.* at 12.)

> The companies have separate employee files, financial records, and company books; file separate tax returns; have separate bank accounts; purchase equipment and supplies separately; enter into separate agreements with clients and vendors; have different managers (aside from Peek); and have separate insurance policies. (Peek Decl. ¶ 13) Both companies are fully capitalized and make all purchases and pay the wages of their employees with their own funds. (Peek Decl. ¶ 13) The nature of the companies' businesses is distinct, and employees are never transferred between the companies. (Scelfo at 8-9, 16-17; Peek Decl. ¶ 13)

(*Id.*) Further, Defendant says that although it and Construction use the same payroll and human resources vendors, they have separate agreements and operate separately. (*Id.*) Defendant acknowledges that it and Construction share the same office space, but "each company pays its portion of the rent to lease the office space." (*Id.*) Defendant cites *Hukill v. Auto Care, Inc.*, 192

---

[2] Plaintiff concedes that she is not attempting to seek FMLA coverage through the joint employer doctrine (Doc. 49 at 22, n.96), so discussion of this argument is omitted.

F.3d 437, 433–44 (4th Cir. 1999) for the proposition that shared vendors and office space have no bearing on the interrelation between the companies. (*Id.*) Defendant asserts that while it, Construction, and Living are sometimes collectively called "Amesbury Companies," this is simply used for marketing and does not reflect interrelated companies. (*Id.* at 12–13.)

As to the third factor, centralized control of labor relations, Defendant argues that its labor decisions are made independently of Construction. (*Id.* at 13.) It says that Peek has similar roles in the management of both companies. (*Id.*) However, Peek's decisions regarding Defendant are separate from his decisions regarding Construction. (*Id.*) Defendant argues that Peek's similar roles are not evidence of centralized labor relations. (*Id.* (citing *Kieffer v. CPR Restoration & Cleaning Serv., LLC*, 200 F. Supp 3d 520, 531 (E.D. Penn. 2016)).)

Finally, Defendant concedes that it and Construction are owned by SDS Interests, Ltd. ("SDS"), which is wholly owned by Peek. (*Id.* at 14.) This makes the final factor, common ownership, weigh in favor of an integrated employer. (*Id.*) But, argues Defendant, this factor is not dispositive, and "common ownership alone is insufficient to establish that two entities are an integrated employer." (*Id.* (citing *Morrison v. Magic Carpet Aviation*, 383 F.3d 1253, 1257 (11th Cir. 2004)).)

b.  Eligible Employee

In the alternative, Defendant argues that Plaintiff was not an eligible employee under the FMLA. (*Id.*) It asserts that an employee must have worked for the employer for at least 12 months and for at least 1,250 hours during those 12 months. (*Id.* (citing 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110(a)(1)–(2)).) Plaintiff only worked for Defendant for about a month before taking her maternity leave. (*Id.*) Defendant argues that Plaintiff's attempt to assert coverage through the "successor in interest" provision lacks merit. (*Id.*) It contends that it is not a successor in interest

to SunRidge, Plaintiff's former employer, because the factors weigh against it. (*Id.* at 14–15 (citing 29 C.F.R. § 825.107(a)).) These factors are:

> (1) Substantial continuity of the same business operations;
> (2) Use of the same plant;
> (3) Continuity of the work force;
> (4) Similarity of jobs and working conditions;
> (5) Similarity of supervisory personnel;
> (6) Similarity in machinery, equipment, and production methods;
> (7) Similarity of products or services; and
> (8) The ability of the predecessor to provide relief.

(*Id.* at 15 (citing 29 C.F.R. § 825.107(a)).)

Defendant acknowledges that factors (1) and (7) weigh in favor of a successor in interest, because it and SunRidge performed property management for Bluebonnet Ridge and Hidden Oaks. (*Id.* at 15–17.) Defendant argues that factor (2) weighs in its favor because Plaintiff worked at Bluebonnet Ridge while employed with SunRidge, but worked at Hidden Oaks when Defendant took over. (*Id.* at 16.) Defendant asserts that this also causes factor (4) to weigh against successor in interest because the two properties differ in "size and location." (*Id.*) Further, Defendant says that its work environment was better for Plaintiff than SunRidge. (*Id.* at 16–17 (citing Brown Dep., Doc. 43-3 at 57:18–25).) It contends that there was not great continuity of workforce—factor (3)—because only five SunRidge employees were hired by Defendant. (*Id.* at 16.) These employees were required to go through an application process and were given new hire dates. (*Id.*) Similarly, Defendant says that it did not hire supervisory personnel from SunRidge, so factor (5) weighs in its favor. (*Id.* at 17.) Defendant asserts that it "brought its own supplies and equipment when it began management of the properties[,]" making factor (6) weigh in its favor. (*Id.*) Finally, Defendant says factor (8) "is irrelevant in this case since plaintiff's leave occurred after [Defendant] hired plaintiff." (*Id.*)

Defendant argues that even if it were a successor in interest to SunRidge, and an integrated employer with Construction, Plaintiff would still not qualify as an eligible employee. (*Id.* at 18.) Excluded from eligible employees is an employee who works at a jobsite where there are fewer than 50 employees employed within 75 miles of the site, determined at the time of notice of the employee's need for leave. (*Id.* (quoting 29 U.S.C. § 2611(2)(B)(ii); 29 C.F.R. § 825.110(a)(1), (f)).) Defendant says that during the time at issue, July 2019, it and Construction did not employ 50 employees within 75 miles of Baton Rouge. (*Id.*)

> Plaintiff's worksite was Hidden Oaks, which is located in Baton Rouge, Louisiana. (Scelfo at 54; Brown at 27) In July 2019, [Defendant] had only approximately 25 employees in Louisiana and within 75 miles of plaintiff's worksite. (Peek Decl. ¶ 19) Its remaining employees, approximately fifteen, worked in Texas. (Peek Decl. ¶ 19) If the employees in Construction are counted, the number of employees still falls significantly short of the requisite threshold. Construction employed only approximately five employees in Louisiana in July 2019. (Peek Decl. ¶ 20) All of its other employees, approximately ten, worked in Texas. (Peek Decl. ¶ 20) Thus, at most, during the pertinent time period, there were only 30 employees employed within 75 miles of plaintiff's worksite. *See McLaughlin v. Tuthill Transfer Sys.,* 2002 U.S. Dist. LEXIS 8735, at *3 (E.D. La. May 9, 2002) (dismissing plaintiff's FMLA claims because defendant did not employ more than 50 employees where plaintiff worked, or within 75 miles).

(*Id.* at 18–19.)

### c.  Timeliness

Defendant's final argument in support of summary judgment on the FMLA claim is that Plaintiff's claim is untimely. (*Id.* at 19.) The FMLA has a sliding statute of limitations: two years, unless there is a willful violation, which changes the statute of limitations to three years. (*Id.* (citing 29 U.S.C. § 2617(c)).) Defendant asserts that Plaintiff cannot meet her burden of showing a willful violation. (*Id.*) It says that it "reasonably believed that it was not covered by the FMLA and, even if covered, plaintiff was not eligible for FMLA leave[,]" and Plaintiff cannot produce evidence to

the contrary. (*Id.*) Defendant argues that because Plaintiff was fired on September 30, 2019, and did not commence this action until September 23, 2022, the suit is untimely. (*Id.*)

## 2. PDA

Defendant argues that, under the *McDonnell Douglas* burden shifting approach, Plaintiff's Pregnancy Discrimination Act ("PDA") claim cannot succeed. (*Id.* at 19–20 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).) This framework requires Plaintiff to first establish a prima facie case of discrimination; then the burden shifts to Defendant to identify "a legitimate, nondiscriminatory reason for its decision[,]"and  then the burden shifts back to Plaintiff to prove that the offered reason is pretext. (*Id.* at 20 (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)).)

Defendant assumes for the purposes of the *Motion* that Plaintiff can establish a prima facie case of discrimination. (*Id.* at 21.) Its reason for terminating Plaintiff is: "it did not have a position available for her when she indicated she was ready to return to work." (*Id.*) It says that it initially hired Lewis to cover Plaintiff's position temporarily, but an audit done shortly after Plaintiff began her leave revealed problems with files that Plaintiff had handled at Bluebonnet Ridge. (*Id.*) Defendant says "Lewis was performing much better than plaintiff in the Site Manager position and [Defendant] was not willing to put plaintiff back into that position due to her performance." (*Id.*) Defendant asserts that Scelfo attempted to find a different position for Plaintiff when she returned, but there were no available positions. (*Id.*)

Defendant argues that Plaintiff will not be able to present evidence showing that its reasons for terminating her employment were pretext and that Plaintiffs allegations are only based on speculation. (*Id.* at 21–22.) Defendant asserts that it would not have discriminated against Plaintiff because of her pregnancy and childbirth (*id.* at 22) and that Scelfo was supportive of Plaintiff while

11

she was on leave, the hiring team knew Plaintiff was pregnant when she began working, and several other employees were pregnant and gave birth around this time (*id.* at 22–23).

Defendant anticipates that Plaintiff will try to show pretext by arguing that she was never made aware of the audit and its findings. (*Id.* at 23.) It says "Scelfo saw no reason to worry plaintiff while she was on maternity leave by sharing the findings, particularly if Scelfo could find another position for her." (*Id.*) Further, it says that Plaintiff cannot point to the EEOC statement of position to show pretext. (*Id.* at 23–24.) The EEOC statement did not mention the audit. (*Id.* at 23.) It says that it is not presenting inconsistent reasons for terminating Plaintiff's employment, "only additional reasons," which do not support "an inference of pretext." (*Id.* at 23–24 (citing *Bennett v. Consolidated Gravity Drainage Dist. No. 1*, 648 F. App'x 425, 431 (5th Cir. 2016) (per curiam)).) Defendant maintains its position as stated in its EEOC statement, that Plaintiff did not notify Scelfo of her intent to return, and the audit findings were additional reasons to hire Lewis permanently. (*Id.* at 24.) Even if these reasons are inconsistent, Defendant contends that "no reasonable jury could conclude that the real reason for plaintiff's termination was intentional discrimination." (*Id.*) Finally, Defendant asserts that Plaintiff is not required to simply present evidence of pretext, it needs to present evidence to give rise to an inference of discrimination. (*Id.* at 25.) It maintains that Plaintiff has not done this. (*Id.*)

### ii. *Opposition* (Doc. 49)

### 1. FMLA

Plaintiff argues that there are genuine issues of fact as to whether Defendant was an employee under the FMLA, and she was an eligible employee. (Doc. 49 at 19.)

a.  Eligible Employee

First, she argues that Defendant was SunRidge's successor in interest. (*Id.*) She concedes that, simply looking at her time employed by Defendant, she did not work for the required year before taking her leave. (*Id.*) However, she argues that her time with SunRidge should be considered. (*Id.*) She analyzes the factors set forth in 29 C.F.R. § 825.107, saying that she need not establish every factor in her favor to show a successor in interest. (*Id.* at 19–20.) As discussed above, Defendant conceded that factors (1), substantial continuity of business operation, and (7), similarity of products or services, favor Plaintiff. (*Id.* at 20–21.) Plaintiff argues that factor (2), use of the same facilities, weighs in her favor, because she worked at both Bluebonnet Ridge and Hidden Oaks while employed with SunRidge. (*Id.* at 20.) She says that factor (3), continuity of workforce, weighs in her favor, because although not every employee was hired by Defendant, five employees that Plaintiff worked with were hired. (*Id.* at 21.) Plaintiff argues that factor (4), similarity of jobs and working conditions, does not favor Defendant, because the jobs at the management companies were the same, regardless of her feelings about her employer or how much of a raise she got. (*Id.*) She asserts that factor (5), similarity of supervisory personnel, can go both ways, because some middle management, like herself, were retained, but the higher management officials were replaced. (*Id.*) Plaintiff rejects Defendant's argument that factor (6), similarity of equipment, weighs in Defendant's favor, because the relevant equipment is the apartment complex, which stayed the same. (*Id.*) Finally, as to factor (8), ability of predecessor to provide relief, Plaintiff argues that SunRidge cannot provide relief because it did not violate her rights, so she must seek relief from Defendant. (*Id.*)

Plaintiff asserts that equitable considerations weigh in her favor, because she was six months pregnant when Defendant took over from SunRidge, she had vested FMLA rights through

her employment with SunRidge, and she had no control over the switch. (*Id.*) "It would be deeply unjust to hold the result of this decision could be to undercut statutory rights which she had already earned and vested." (*Id.* at 22.)

She argues that the question of whether Defendant employed 50 employees within 75 miles of her worksite should be left to the jury. (*Id.* at 23.) She points to Scelfo's testimony "that the Construction workers are in Youngsville, less than 75 miles from Baton Rouge." (*Id.* at 23–24.) Plaintiff argues that since Construction does work on Defendant's properties, they must be geographically close. (*Id.* at 24.) She says, "most convincingly," Defendant's payroll protection plan ("PPP") loan application lists more than 50 employees and lists the location as Baton Rouge. (*Id.*) She argues that this creates a genuine issue of material fact, and summary judgment should not be granted. (*Id.*)

### b. Employer

Plaintiff argues that Defendant and all other Amesbury companies should be considered an integrated employer for the purpose of counting employees. (*Id.* at 22.) She concedes that Defendant, by itself, does not employ 50 employees. (*Id.*) She asserts that, when counting the employees of other Amesbury companies, there are more than 50 employees. (*Id.*) She says that the integrated employer test is a question for the jury. (*Id.*)

First, she says that there is common management between Defendant and Construction because Peek "is the sole owner and the sole officer of all Amesbury Companies." (*Id.*) Plaintiff argues that Peek was heavily involved in the takeover of the Properties. (*Id.*) Scelfo and Miesch have no role in Construction; Plaintiff avers that management need not be identical. (*Id.*)

Second, Plaintiff asserts that Defendant and Construction "are generally in the business of providing apartment and rental services under the command of Robert Peek, and their operations

are not so unrelated and disparate as to justify using that as an excuse to take away their employees' statutory right to medical leave." (*Id.* at 23.)

Third, Plaintiff argues that labor relations of Defendant and Construction are "wholly vested in Mr. Peek." (*Id.*) She points to both companies' use of the same handbook, payroll provider, and office space. (*Id.*)

Finally, Defendant acknowledged that there is total common ownership of Defendant and Construction, and Plaintiff argues that this factor, weighed alongside the other factors, indicates that Defendant and Construction are an integrated employer. (*Id.*)

Plaintiff says that separate bank accounts and separate tax returns are irrelevant, because those are piercing the corporate veil factors. (*Id.*) She argues that the factors are similar, but different, and the Court should abide by the regulatory factors. (*Id.*) The question of integration should be left to the jury. (*Id.*)

c.   Timeliness

Plaintiff argues that the question of whether the FMLA violation is willful—therefore extending her time to file—is a question for the jury. (*Id.* at 24.) She says that a reasonable jury could find a willful violation. (*Id.*) She looks to Defendant's actions in replacing her two and a half weeks into her leave, without telling her the true reason for her termination. (*Id.*) She says that shifting justifications, as discussed in the pregnancy discrimination section, indicate Defendant's willfulness. (*Id.* at 24–25 (citing *Benjamin v. United Merchs. & Mfrs., Inc.*, 873 F.2d 41, 44–45 (2d Cir. 1989)).) Finally, she says that there is no evidence that Defendant attempted to determine if it was required to give her leave under the FMLA. (*Id.* at 25.) "This total lack of concern for its legal obligations certainly qualifies as reckless disregard." (*Id.*) Therefore, she argues that there remains a genuine issue of material fact. (*Id.*)

### 2. PDA

Plaintiff agrees that the *McDonnell Douglas* burden shifting approach applies here. (*Id.* at 6.) She argues that Defendant's shifting justifications for firing her indicate that their proffered justification is pretext. (*Id.* at 7 (citing *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 540 (6th Cir. 2014)).) She says that the Fifth Circuit has called inconsistent explanations an indicator of pretext. (*Id.* (quoting *Robinson v. Jackson State Univ.*, 714 F. App'x 354, 363 (5th Cir. 2017)).) "This is because '[w]hen an employer offers inconsistent explanations for its employment decision at different times, as here, the jury may infer that the employer's proffered reasons are pretextual.' " (*Id.* at 7–8 (quoting *Staten v. New Palace Casino, LLC*, 187 F. App'x 350, 359 (5th Cir. 2006)).)

Plaintiff argues that Defendant has shifted its reasoning for firing her. (*Id.* at 8.) She first looks to the explanation Scelfo gave her when she was terminated. (*Id.*) Plaintiff says that Scelfo said nothing about her performance, simply saying that there were no positions for her. (*Id.*) She argues that her performance could not have been the motivation behind her firing, because Scelfo wanted to "help find her another job in the industry." (*Id.* at 8–9.) Plaintiff then looks to the explanation given in the EEOC statement, that she never told Scelfo if she would return from maternity leave. (*Id.* at 9.) Plaintiff argues that if the allegations about her misconduct uncovered during the audit were true, Defendant would have cited it as the reason for her termination in the EEOC statement. (*Id.*) She says that this version of the story was repeated in a status report to this Court in February 2023. (*Id.* at 10.)

Plaintiff argues that Defendant has not produced any evidence of an audit. (*Id.*) Further, she says that there is no evidence of wrongdoing on her part, and she was not questioned about the audit findings in her deposition in January 2024. (*Id.*) Plaintiff contends that the first time the audit

16

and its role in her termination were mentioned was in Scelfo's deposition, but there is no written documentation to support Scelfo's claims. (*Id.* at 10–11.) She asserts that this is the same justification Defendant sets forth in its *Motion*, and says it is unsupported by any contemporaneous documentation. (*Id.* at 11.)

Plaintiff says that *Bennett*, cited by Defendant, is inapplicable here, because that case dealt with supplementary information. (*Id.* at 11–12 (citing *Bennett*, 648 F. App'x at 430).) Conversely, Defendant here has changed its reasoning multiple times. (*Id.* at 12 (citing *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 238–39 (5th Cir. 2015)).) Plaintiff argues that Defendant has admitted that its reasoning from the EEOC statement is not true, because it said in its *Motion* that Plaintiff never indicated that she would not return to work. (*Id.* (citing Doc. 43-1 at 5, n.5)).) Further, Plaintiff argues that Defendant has added defenses pointing to her disputes with former coworkers. (*Id.*)

Plaintiff contends that there is a "clear and apparent connection between [her] pregnancy and her replacement and eventual termination, as the new manager was hired during [Plaintiff's] pregnancy leave (while [Defendant] apparently tried to hide that fact from [Plaintiff])." (*Id.* at 12–13.) She says that this "is enough to raise an inference of intentional discrimination and squarely places the burden on the employer to provide a robust justification." (*Id.* at 13.) She argues that the inconsistent, unsupported explanations, compounded with the timing of her termination, is strong evidence of discrimination. (*Id.*) Defendant's current explanation lacks merit, she argues, especially because "it conflicts with its prior actions." (*Id.* (emphasis omitted).) If she "was a poor manager who couldn't get along with her employees, and left important tax documentation incomplete or inaccurate[,]" then Scelfo would not have attempted to find her another job. (*Id.*)

17

Plaintiff argues that the shifting explanations create a credibility issue, which should be left to the jury. (*Id.*)

In further opposition to the *Motion*, Plaintiff avers that Defendant has failed to produce contemporaneous written evidence supporting its defense. (*Id.* at 14.) She says there is no evidence that her coworkers disliked her, nor evidence of an audit. (*Id.*) She argues that there is no evidence of problems with the files she handled, and she was not even questioned about the issues, indicating that, at best, there is a credibility issue for the jury to determine. (*Id.* at 14–15.) Plaintiff cites to Fifth Circuit caselaw, saying "[w]here the defendant relies almost exclusively on its own manager's testimony in depositions and declarations, without any supporting objective evidence, summary judgment is not proper." (*Id.* at 15 (citing *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016)).) She says that Defendant has failed to provide contemporaneous written evidence, consistent with its current justification, so summary judgment must be denied. (*Id.* at 15–16.)

Plaintiff argues that even if Scelfo and Miesch liked her personally, her termination while on maternity leave is pregnancy discrimination. (*Id.* at 16.) She likens this case to *Ruh v. Superior Home Health Care, Inc.*, No. 15-439, 2017 WL 2702225 (M.D. La. June 22, 2017), where summary judgment was denied even though the plaintiff's supervisor cited the baby's health as her reason for encouraging the plaintiff to take maternity leave early. (*Id.*) Plaintiff says that the same is true here. (*Id.* at 16–17.) "Even if Scelfo's decision was made in part due to benign or beneficial reasons such as a desire for [Plaintiff] to take better care for her baby or a legitimate concern about the rising cost of child care, that would still qualify as pregnancy discrimination under the law." (*Id.* at 17 (citing *Hillins v. Mktg. Architects, Inc.*, 808 F. Supp. 2d 1145, 1154 (D. Minn. 2011)).)

Plaintiff says that the fact that other employees were allowed to take maternity leave and were not fired is irrelevant. (*Id.*) She argues that Miesch, who took maternity leave, is not a comparator, because she is Scelfo's daughter. (*Id.*) Plaintiff again cites to *Ruh*, where the owner being seemingly supportive of the plaintiff's pregnancy leave did not entitle the defendant to summary judgment. (*Id.* at 17–18 (citing *Ruh*, 2017 WL 2702225 at * 4).)

Finally, Plaintiff argues "[t]he clear weight of jurisprudence holds that defendants are not entitled to summary judgment when they terminate an employee during her pregnancy-related medical leave." (*Id.* at 18 (citing *Valentine v. Legendary Marine Fwb*, No. 09-334, 2011 U.S. Dist. LEXIS 169709, at *15 (N.D. Fla. Jan. 14, 2011); *Doe v. CARS Protection Plus, Inc.*, 527 F.3d 358 (3d Cir. 2008); *Asmo v. Keanse, Inc.*, 471 F.3d 588, 598 (6th Cir. 2006)).) She says that the temporal proximity between her leave and her termination indicates that there was some connection between the two. (*Id.* at 18–19.) Therefore, she argues, the *Motion for Summary Judgment* should be denied as to the pregnancy discrimination claim. (*Id.* at 19.)

### iii. *Reply* (Doc. 52)

#### 1. FMLA

Defendant argues that Plaintiff fails to defeat summary judgment on every element of her FMLA claim. (Doc. 52 at 2.) It first looks to the 75-mile radius requirement, and says that Scelfo's testimony about Construction employees in Youngsville was related to those employees' *current* whereabouts. (*Id.*) Further, it contends that Plaintiff's citation to the PPP loan data is irrelevant not only because the data is from 2020, not July 2019, but the information submitted does not indicate where those employees work. (*Id.*)

As to the integrated employer test, Defendant argues that the factors indicate that Defendant and Construction are not integrated. (*Id.* at 3.) It says that Plaintiff admitted that Peek

was the only common manager in both companies, and that there is no other crossover in management. (*Id.*) "While [Defendant] acknowledges that 'there is no requirement that management be identical, at every level,' a single common manager is insufficient to satisfy the first factor of the integrated employer test." (*Id.* (citing *Kieffer*, 200 F. Supp. At 530).)

Next, Defendant argues that Plaintiff's mischaracterization of the businesses defeats her argument for interrelation of operations. (*Id.*) Defendant asserts that it "is a property management company, and Construction is a construction company." (*Id.*) Even so, the characterization of the businesses is not what matters, but to what extent the businesses are comingling. (*Id.*) Defendant says that the overwhelming evidence shows that there is no comingling. (*Id.*) It adds in a footnote that the "veil piercing" considerations are commonly used in evaluating this factor. (*Id.* at 3, n.2 (citing *Hukill*, 192 F.3d at 443).)

Finally, Defendant avers that labor relations are not centralized, because any involvement that Peek has in Defendant's hiring processes is separate from Construction. (*Id.* at 3–4.) It argues that the use of the same handbook does not mean that each company has control of the other's labor relations. (*Id.* at 4 (citing *Cardinale v. S. Homes of Polk Cnty., Inc.*, No. 06-1295, 2008 WL 788460 (M.D. Fla. Mar. 19, 2008)).)

Defendant urges that Plaintiff cannot show a willful violation of the FMLA because shifting reasons for termination is not properly considered regarding an FMLA claim. (*Id.*) It says that the cases cited by Plaintiff dealt with "willfulness for purposes of liquidated damages in the context of the Age Discrimination Act . . . [,]" thus are not applicable. (*Id.*) Defendant argues that Plaintiff has failed to produce evidence that it willfully disregarded the FMLA, and if it did violate federal law, it did so negligently. (*Id.* at 4–5.) Therefore, Defendant argues that the two-year statute of limitations should apply, making this action untimely. (*Id.* at 5.)

## 2. PDA

Defendant reiterates its argument that it has not changed its reasoning for firing Plaintiff: "there was no position available for her when she contacted Scelfo about returning to work . . . ." (*Id.* at 5.) Defendant argues that Plaintiff is required to rebut each of its justifications and has failed to do so. (*Id.* at 5–6 (citing *Jackson v. Watkins*, 619 F.3d 463, 467 (5th Cir. 2010)).) Specifically, Plaintiff has not rebutted its position that Plaintiff was terminated because there were no positions available. (*Id.* at 5.) Defendant asserts that any evidence of Plaintiff's poor relationship with employees had nothing to do with its decision to hire Lewis permanently. (*Id.* at 7.) While the audit findings led to Defendant's decision to hire Lewis permanently, Lewis was performing better in the position but intended to give Plaintiff another position. (*Id.* at 7–8.)

Defendant argues that Plaintiff has offered no evidence that would indicate that Defendant's true intentions were to discriminate her based on her pregnancy (*id.* at 8) or had anything to do with her pregnancy. (*Id.* at 8–9.) It distinguishes *Ruh*, saying that the facts of *Ruh* are a "far cry" from this case. (*Id.* at 9.) Further, it asserts that the fact that Scelfo, Miesch, and Peek knew Plaintiff was pregnant when they hired her, and that there were multiple other pregnant employees at the time is very relevant to this inquiry. (*Id.*) Finally, Defendant argues that temporal proximity alone is not evidence of discrimination, and simply because Plaintiff was fired while on maternity leave does not mean she was discriminated against. (*Id.* at 9–10 (citing *Shafrir v. Ass'n of Reform Zionists of Am.*, 998 F. Supp. 355, 361 (S.D.N.Y. 1998)).) Therefore, Defendant says it is entitled to summary judgment on the pregnancy discrimination issue. (*Id.* at 10.)

## B. Law and Analysis

### i. FMLA

The FMLA entitles eligible employees "to a total of 12 workweeks of leave during any 12-month period for one or more of the following: Because of the birth of a son or daughter of the employee and in order to care for such son or daughter." 29 U.S.C. § 2612(a)(1)(A) (cleaned up).

> The term "eligible employee" means an employee who has been employed—
> (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and
> (ii) for at least 1,250 hours of service with such employer during the previous 12-month period.

*Id.* at § 2611(2)(A)(i–ii). There is an exception for "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." *Id.* at § 2611(2)(b).

> The term "employer"—
> (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
> (ii) includes—
> (I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
> (II) any successor in interest of an employer[.]

*Id.* at § 2611(4).

### 1. Employer

Defendant argues first that it is not an employer under the FMLA because it did not employ more than 50 employees during the relevant time period, 2018 to 2019. (Doc. 43-1 at 8.) Plaintiff counters that Defendant, when combined with Construction as an integrated employer, does employ at least 50 employees. (Doc. 49 at 22.) 29 C.F.R. § 825.104 provides the rule for integrated employers:

> Separate entities will be deemed to be parts of a single employer for purposes of FMLA if they meet the integrated employer test. Where this test is met, the employees of all entities making up the integrated employer will be counted in determining employer coverage and employee eligibility. A determination of whether or not separate entities are an integrated employer is not determined by the application of any single criterion, but rather the entire relationship is to be reviewed in its totality. Factors considered in determining whether two or more entities are an integrated employer include:
> (i) Common management;
> (ii) Interrelation between operations;
> (iii) Centralized control of labor relations; and
> (iv) Degree of common ownership/financial control.

29 C.F.R. § 825.104(c)(2)(i–iv).

Two of the four factors were discussed in detail by the Fifth Circuit in *Perry v. VHS San Antonio Partners, LLC*, 990 F.3d 918, 927–28; *see also Leggett v. Mac Haik Ford, Ltd.*, No. 21-789, 2024 WL 3488127, at * 3 (W.D. Tex. July 19, 2024) (discussing *Perry* in relation to the FMLA integrated employer test); *Jurek v. Williams WPC-I, Inc.*, No. 08-1451, 2009 WL 1748732, at *5 (S.D. Tex. June 17, 2009) (linking the integrated employer tests from Title VII and the FMLA). Regarding interrelation of operations, the court said that this factor " 'ultimately focuses on whether' one entity 'excessively influenced or interfered with the business operations' of the other." *Perry*, 990 F.3d at 927 (citing *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997)).

> Evidence suggestive of interrelated operations includes (1) one entity's involvement in the other's daily decisions relating to production, distribution, marketing, and advertising; (2) shared employees, services, records, and equipment; (3) commingled bank accounts, accounts receivable, inventories, and credit lines; (4) one entity's maintenance of the other's books; (5) one entity's issuance of the other's paychecks; and (6) one entity's preparation and filing of the other's tax returns.

*Id.* (citing *Lusk*, 129 F.3d at 778).

Plaintiff does not dispute that Defendant and Construction "have separate employee files, financial records, and company books; file separate tax returns; have separate bank accounts;

purchase equipment and supplies separately, enter into separate agreements with clients and vendors; have different managers (aside from Peek); and have separate insurance policies." (*Plaintiff's Response to Statement of Material Facts* ("*PRSMF*"), Doc. 49-11 at 17, ¶ 96.) Plaintiff also does not dispute that while Defendant and Construction use the same payroll vendor, their accounts are separate. (*Id.* at ¶ 100.) The undisputed facts indicate that Defendant and Construction operate separately. Even when viewing the evidence in a light most favorable to Plaintiff, this factor weighs against finding an integrated employer.

The next factor discussed by *Perry* is centralized control of labor relations, which the Fifth Circuit says "has been called the most important one." *Perry*, 990 F.3d at 927 (quoting *Johnson v. Crown Enterprises, Inc.*, 398 F.3d 339, 343 (5th Cir. 2005)) (internal quotation marks omitted). The Fifth Circuit has "refined the inquiry into one question: What entity made the final decisions on employment matters regarding the person claiming discrimination?" *Id.* at 927–28 (citing *Johnson*, 398 F.3d at 343). Here, Plaintiff focuses her argument on Peek's role in both companies, companies' payroll vendor, and the location of the companies, saying that all labor relations "are wholly vested in Mr. Peek." (Doc. 49 at 23.)

While the record supports the notion that Peek is involved in the labor relations of Defendant, Plaintiff fails to produce evidence of Peek's involvement of the labor relations in Construction. Further, Scelfo testified at her deposition that she made the decision to hire Plaintiff, which Scelfo assumed involved the input of Miesch and Peek. (Scelfo Dep., Doc. 43-4 at 39:23–40:5.) Peek, Scelfo, and Miesch were all involved in the decision to have Plaintiff replaced as manager of Hidden Oaks. (Peek Dep., Doc. 43-5 at 26:4–22.) Scelfo and Miesch do not work for Construction, and Plaintiff does not allege that they make employment decisions at Construction. (Scelfo Dep., Doc. 43-4 at 17:16–18.)

24

Plaintiff has not presented any evidence that Peek, in his capacity as CEO of Construction, made the decision to terminate her employment. Plaintiff says multiple times in the *PRSMF* that Peek ultimately makes the labor decisions for both Defendant and Construction but provides no evidence to support this conclusion. (*PRSMF*, Doc. 49-11 at 18, ¶¶ 102–05.) She cites to page 49 of Peek's deposition, but page 49 was not provided to the Court. (*Id.* at ¶ 102.) The Fifth Circuit has declined to find centralized labor relations when a plaintiff "failed to present any evidence that the parent entity actually made *any* of the subsidiary's labor decisions, *including* decisions regarding the underlying litigation." *Oaktree Capital Mgmt., LP v. N.L.R.B.*, 452 F. App'x 433, 442 (5th Cir. 2011) (quoting *Johnson*, 398 F.3d at 344 (5th Cir. 2005) (cleaned up); *see also Kieffer*, 200 F. Supp 3d at 531 (citing *Grace v. USCAR*, 521 F.3d 655, 665 (6th Cir. 2008) ("However, Kieffer has offered no evidence that one *business* exerted control of the labor relations of the other.") Plaintiff bears the burden of producing "specific facts showing that there is a *genuine issue* for trial" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citations omitted). This burden may not be satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). Plaintiff has failed to produce evidence to create a genuine issue of material fact as to whether Defendant and Construction have centralized labor relations. Based on the evidence in the record, a reasonable jury would not be able to find that there are centralized labor relations. Therefore, this factor weighs against an integrated employer.

The Third Circuit Court of Appeals has addressed the factors considered in determining whether there is common management. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 498 (3d Cir. 2001). It said that this factor typically asks whether the companies "(1) actually have the same

people occupying officer or director positions with both companies; (2) repeatedly transfer management-level personnel between the companies; or (3) have officers and directors of one company occupying some sort of formal management position with respect to the second company." *Id.* (citing *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1364 (10th Cir. 1993)).

Peek is the only common officer between Defendant and Construction. (*SUMF*, Doc. 43-2 at 12, ¶ 92.) In 2019, Scelfo was the COO of Defendant, and Miesch was the only regional director. (Scelfo Dep., Doc. 43-4 at 13:21–14:22.) Scelfo said in her deposition that Robert and Kurt Miller, Sr. are the equivalent managers for Construction and said that Kurt Miller "runs the entire company." (*Id.* at 17:19–24.) Plaintiff does not offer any evidence about Peek's role in Construction, only pointing to Peek's role in the take-over of managing the Properties. (Doc. 49 at 22.)

Simply because Peek was heavily involved in Defendant's operations does not mean that he is equally involved with Construction. Again, Plaintiff bears the burden of producing "specific facts showing that there is a *genuine issue* for trial" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (internal citations omitted). This burden may not be satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (citations and internal quotations omitted). With no evidentiary support for Plaintiff's contention that Peek "is the ultimate decisionmaker[,]" for both Defendant and Construction, compounded with the fact that Construction has separate officers, there is no genuine issue of material fact as to this factor, and it weighs against finding an integrated employer.

Finally, Defendant concedes that "during the relevant time period, [Defendant] and Construction were both owned by SDS Interests, Ltd. ("SDS"), and Peek is the sole owner of SDS." (Doc. 43-1 at 14.) This factor weighs in favor of an integrated employer.

Three of the four factors from 29 C.F.R. § 825.104(c) weigh against finding an integrated employer. The parties agree that common ownership alone is not sufficient to support a finding of an integrated employer. (Doc. 49 at 23 (citing *Morrison*, 383 F.3d at 1257).) Even when viewing the evidence in a light most favorable to Plaintiff, a reasonable jury could not conclude that Defendant and Construction are a single employer. Construction's employees may not be attributed to Defendant. The parties agree that Defendant did not employ more than 50 employees while Plaintiff worked there, so Defendant was not considered an "employer" by the FMLA. (*Id.* at 22); 29 C.F.R. § 825.104(c). Therefore, Defendant is entitled to summary judgment on the FMLA claim.

## 2. Eligible Employee

Further supporting this Court's decision to grant summary judgment, even if Defendant and Construction were integrated employers, Plaintiff was not an eligible employee. She has not presented evidence to show that Defendant and Construction collectively employed 50 employees within 75 miles of Plaintiff's jobsite. An employee is not covered by the FMLA if there are fewer than 50 employees within 75 miles of her worksite. 29 U.S.C. § 2611(2)(B)(ii). Peek stated in his declaration in support of this *Motion for Summary Judgment* that in July 2019, Defendant employed 25 employees in Louisiana and approximately 15 employees in Texas. (Peek Decl., Doc. 43-6 at 3, ¶ 19.) He also stated that only five of Construction's employees were located in Louisiana, and the other ten employees worked in Texas during this time. (*Id.* at ¶ 20.) Combined, Defendant and Construction employed 30 employees in Louisiana, and 25 in Texas.

Plaintiff's only evidence to rebut this statement is information from PPP loan data. These reports indicate that Construction reported 11 jobs in its application for a PPP loan, and Defendant reported 44 jobs for one PPP loan and 43 jobs for a loan approved a year later. (Doc. 49-9.) The

evidence submitted by Plaintiff does not indicate where these jobs are located, only listing Baton Rouge as the location of the companies. (*Id.*) Plaintiff does not dispute that Defendant and Construction do business in Texas. (*PRSMF*, Doc. 49-11 at 1, ¶ 1; 14 at ¶ 79.) The Texas state line is more than 75 miles from Baton Rouge. *See United States v. Herrera-Ochoa*, 245 F.3d 495, 501–02 (5th Cir. 2001) (holding that a court may take judicial notice of "a clear adjudicative fact: geographical location.") Plaintiff's citation to Scelfo's deposition has no relevance to her argument. Scelfo testified that "[*p*]*resently* [Construction is] building 93 units in Youngsville." (Scelfo Dep., Doc. 49-3 at 8:22–25 (emphasis added).) The deposition was given on January 11, 2024, (Doc. 49-3 at 1) which is not indicative of Construction's employees' whereabouts in July 2019. Therefore, Plaintiff has failed to present evidence to rebut Defendant's contention that fewer than 50 workers were employed within 75 miles of her jobsite in Baton Rouge. There is no genuine issue of material fact, and a reasonable jury would not be able to find in Plaintiff's favor.

### ii.  PDA

> The Pregnancy Discrimination Act makes clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy. It also says that employers must treat "women affected by pregnancy . . . the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work."

*Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 210 (2015) (citing 42 U.S.C. § 2000e(k)) (omission in original. The Supreme Court said in *Young* that a plaintiff seeking "to show disparate treatment through indirect evidence may do so through application of the *McDonnell Douglas* framework." *Id.* at 228 (discussing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

First, Plaintiff must make a prima facie showing of discrimination, "showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under Title VII." *Id.*

(quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575 (1978)) (internal quotation marks omitted). Plaintiff must show that she

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group.

*Carmona v. Dejoy*, No. 22-20064, 2022 WL 16836978, at * 1 (5th Cir. Nov. 9, 2022) (per curiam) (quoting *Morris v. Town of Indep.*, 827 F.3d 396, 400 (5th Cir. 2016)) (internal quotation marks omitted). Defendant did not argue that Plaintiff would fail on this step, and assumed for the purpose of this *Motion for Summary Judgment* that Plaintiff could make a prima facie case. (Doc. 43-1 at 21.) The Court finds that Plaintiff has made a prima facie case here. As set forth in the undisputed material facts, Plaintiff was pregnant, went on maternity leave, and was fired and replaced while on maternity leave. (*SUMF*, Doc. 43-2 at 5–9, ¶¶ 28, 37, 56, 62.). Plaintiff had been in the position at issue since before she was employed with Defendant, and Defendant does not dispute for these purposes that Plaintiff was not qualified. (Doc. 43-1 at 21.) Plaintiff was replaced by Lewis, who was not pregnant. (*SUMF*, Doc. 43-2 at 9, ¶ 62–63.). Therefore, a prima facie case of discrimination has been shown.

Next, "[t]he employer may then seek to justify its refusal to accommodate the plaintiff by relying on 'legitimate, nondiscriminatory' reasons for denying her accommodation." *Young*, 575 U.S. at 229 (citing *McDonnell Douglas*, 411 U.S. at 802). "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007), *abrogated on other grounds by Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023).

Defendant cites its reason for firing Plaintiff as "it did not have a position available for her when she indicated she was ready to return to work." (Doc. 43-1 at 21.) It says that it needed

someone to cover Plaintiff's position while she was away. (*Id.*) Defendant hired Lewis as a temporary manager, but soon hired her for a permanent position. (*Id.*) Defendant says that an audit done of files that Plaintiff had maintained showed that Plaintiff was performing poorly in her current position. (*Id.*) Poor performance is a legitimate, nondiscriminatory reason for termination, thus Defendant has met its burden. *See Feist v. Louisiana, Dept. of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 455 (5th Cir. 2013) (citing *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684–85 (5th Cir. 2001) ("noting that evidence of poor work performance satisfies burden")).

Since Defendant "has met its burden of production by proffering a legitimate, nondiscriminatory reason for [Plaintiff's] termination, the burden now shifts back to her to rebut this reason as pretextual." *Offord v. City of Fulshear*, 861 F. App'x 536, 541 (5th Cir. 2021). To establish pretext, Plaintiff is required to

> rebut each nondiscriminatory reason articulated by the employer." [*Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001).] A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or "unworthy of credence." *Id.*; [*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).] An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action. *See Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002). Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive. *Id.* at 897; [*Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 2000).] No further evidence of discriminatory animus is required because "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation...." *Reeves*, 530 U.S. at 147–48[]. The "rare" instances in which a showing of pretext is insufficient to establish discrimination are (1) when the record conclusively reveals some other, nondiscriminatory reason for the employer's decision, or (2) when the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue, and there was abundant and uncontroverted evidence that no discrimination occurred. *See Russell*, 235 F.3d at 223 (citing *Reeves*, 530 U.S. at 148[]); [*Rubinstein v. Administrators of Tulane Educ. Fund*, 218 F.3d 392 (5th Cir. 2000).] A decision as to whether judgment as a matter of law is appropriate ultimately turns on " 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly

may be considered on a motion for judgment as a matter of law.' " *Wallace*, 271 F.3d at 220 (quoting *Reeves*, 530 U.S. at 148–49[]).

*Laxton v. Gap Inc.*, 333 F.3d 572, 578–79 (5th Cir. 2003).

Plaintiff argues that she established pretext because Defendant's reasons for terminating her have been inconsistent. (Doc. 49 at 7.) "When an employer offers inconsistent explanations for its employment decision at different times, as here, the jury may infer that the employer's proffered reasons are pretextual." *Staten v. New Palace Casino, LLC*, 187 F. App'x 350, 359 (5th Cir. 2006) (per curiam) (citing *Gee v. Principi*, 289 F.3d 342, 347 (5th Cir. 2002)). The Court in *Staten* explained that shifting explanations, along with the timing of the change of explanation, can lead a factfinder to determine that an employer's proffered justification is pretext. *Id.* at 359.

Contrary to Defendant's assertions, there have been shifting justifications for Plaintiff's termination. In the EEOC statement of position, Defendant indicates that there was no position for Plaintiff because Scelfo did not know if Plaintiff would return to work from maternity leave. (Doc. 49-8 at 2–3.)

> However, when Brown left, she never provided Amesbury with an anticipated return date. Instead, she indicated to Scelfo that she did not know if she was going to come back to work at all in light of the fact that she already had three other children and considering the cost of childcare relative to her compensation.
>
> Had Brown indicated that she intended to return to work and provided Amesbury with an anticipated return date, Amesbury was prepared to have someone temporarily perform with Site Manager duties until Brown's return. However, since Brown conveyed to Scelfo that she did not know if she was going to return to work, Scelfo informed Brown that they would have to hire a new Site Manager for Hidden Oaks. In response, Brown did not voice any objections and appeared to understand that Amesbury would not be holding the Site Manager job open on the chance that she decided to return to work at some unknown time in the future. In the event Brown decided to return to work and there was a position available at Amesbury for which she was qualified, Amesbury was certainly willing to consider Brown for such position. Amesbury subsequently hired a new Site Manager for Hidden Oaks, Tamara Lewis, another female.

(*Id.*) Defendant further says that it hired a permanent Site Manager for Hidden Oaks because Plaintiff never notified Scelfo of her return date. (*Id.* at 4.)

In the briefing for this *Motion for Summary Judgment*, Defendant recounts a slightly different version of the story. While the general reason for not having an available spot for Plaintiff remains the same, Defendant's alleged justification for this unavailability has changed. "It is further undisputed that, shortly after plaintiff began her maternity leave, Amesbury discovered significant issues in the files previously maintained by plaintiff at Bluebonnet Ridge, and thus, it decided to hire Tamara Lewis for the Site Manager position on a permanent basis." (Doc. 43-1 at 21.) Peek in his deposition stated that they realized Plaintiff's employment did not need to continue after finding discrepancies in the files she managed at Bluebonnet Ridge. (Peek Dep., Doc. 43-5 at 24:2–25:23.)

While Defendant cites to *Bennett*, arguing that it its justifications have not changed, *Bennett* is not directly applicable. *Bennett* dealt with *additional* justifications for termination, not different justifications. 648 F. App'x at 431. Bennett's employer cited her performance issues as the reason for termination in an EEOC filing, but later cited Bennett's involvement in a workplace incident where Bennett claimed someone put hand sanitizer in her drink, which her employers believed to be false. *Id.* at 430. Notably, the employer did not abandon the plaintiff's work performance as a justification for her termination, but simply added the other two reasons later in litigation. *Id.* at 431. Here, Defendant offers the same general justification for firing Plaintiff—the lack of available positions—but cites completely different reasons. (Doc. 43-1 at 22.) Defendant states in the EEOC statement that it "wanted her to return to the Site Manager position[,]" after her leave. (Doc. 49-8 at 4.) This statement is inconsistent with its representation in the *Motion for Summary Judgment* that Plaintiff was performing poorly in her role as Site Manager, and it "was not willing to put

plaintiff back into that position due to her performance." (Doc. 43-1 at 21.) Defendant's justification is not additional; it is different. Therefore, *Bennett* does not control.

Plaintiff has established that there remains a genuine issue of material fact here. Defendant has offered two differing accounts of the circumstances surrounding Plaintiff's termination, which a jury may infer to mean that Defendant's reasons are pretextual. *See Staten*, 187 F. App'x at 359. It is the jury's role, as fact finder, not the Court's, to make a credibility determination as to whether to believe Defendant's proffered justification. *Russell*, 235 F.3d at 225; *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). When viewing the evidence in a light most favorable to Plaintiff, a reasonable jury could conclude that Defendant's proffered reasons for firing Plaintiff are pretext. Therefore, Defendant's *Motion for Summary Judgment* will be denied as to the Pregnancy Discrimination Act claim.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment* (Doc. 43) filed by defendant Amesbury Management LLC is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the *Motion for Summary Judgment* is **DENIED** as to Plaintiff's Pregnancy Discrimination Act claim.

**IT IS FURTHER ORDERED** that the *Motion for Summary Judgment* is **GRANTED** as to Plaintiff's Family Medical Leave Act claim, and that claim is **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on <u>March 26, 2025</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**
33